AO 91 (Rev. 11/11)  Criminal Complaint

| | | |
|---|---|---|
| AUSA: Rajesh Prasad | | Telephone: (313) 226-0821 |
| Special Agent: Peter Leahey | | Telephone: (313) 234-4000 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| United States of America<br>v.<br>Pedro ANGULO-BENITEZ | Case No. | Case: 2:24−mj−30392<br>Assigned To : Unassigned<br>Assign. Date : 9/11/2024<br>Description: COMP USA V. ANGULO BENITEZ (KB) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 9, 2024__ in the county of __Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC §841(a)(1) | Possession with intent to distribute cocaine |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Peter Leahey
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: September 11, 2024

City and state: Detroit, MI

_____
Judge's signature

Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

## Affidavit

I, Peter Leahey, being duly sworn, depose and state the following:

### I. Introduction

1. I am a Special Agent ("SA") of the United States Drug Enforcement Administration ("DEA"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the DEA since May 2018 and am presently assigned to the DEA Division Office in Detroit, Michigan. Prior to my employment with DEA, I was employed with the Federal Air Marshal Service as a Federal Air Marshal. I have successfully completed a nineteen (19) week DEA Basic Agent Training Academy at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of federal drug violations, including, but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. I have assisted in numerous narcotics investigations that have led to the seizure of narcotics and the arrests of numerous individuals. I have used various methods of investigation including, but not limited to, physical surveillance, electronic surveillance, phone toll analysis, records research, executed search warrants, trash searches, photo and video analysis, and interviews of confidential informants,

1

defendants, and witnesses. I have discussed with law enforcement officers, cooperating defendants, and informants, the methods and practices used by narcotics distributors.

2. In addition, I have completed various training provided by the DEA and local law enforcement agencies, including, but not limited to, training on identifying characteristics associated with the manufacture, sale, and transportation of various narcotics, including, but not limited to, phencyclidine (PCP), methamphetamine, heroin, cocaine, and marijuana. This training involved the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process.

3. I have participated in narcotics investigations either as a case agent or in a supporting role. I have assisted on the execution of multiple federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations. Additionally, I have participated in many aspects of drug investigations including but not limited to, undercover operations, conducting physical and electronic surveillance, and arrests. As a result, I am familiar with narcotics traffickers' methods of operation

including the distribution, storage, manufacturing, and transportation of narcotics and the collection of money proceeds of narcotics trafficking.

4. I am aware of the following information from several sources, including but not limited to, my own personal observations and participation in this investigation and my review and analysis or oral and written reports.

5. I make this affidavit from personal knowledge based on my participation in this investigation, including the writing and review of reports by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the details or facts related to this investigation.

## II. Investigation and Probable Cause

6. I, along with other law enforcement personnel, developed probable cause that on September 9, 2024, Pedro ANGULO-BENITEZ did knowingly and intentionally possess with intent to distribute cocaine in violation of Title 21, United States Code, Section 841(a)(1).

7. On September 6, 2024, the United States Magistrate Kimberly G. Altman, Eastern District of Michigan, authorized a search for the residence located at 45 E. Ypsilanti Avenue, Pontiac, Michigan. This is the residence of Pedro ANGULO-

BENITEZ who previously admitted to law enforcement that he stores narcotics at this residence.

8. On September 9, 2024, at approximately 11:45 AM, Investigators observed ANGULO-BENITEZ exit the 45 East Ypsilanti Ave., Pontiac, Michigan with a Hispanic male adult (HMA1). ANGULO-BENITEZ and HMA1 were observed walking to the Chase Bank located at 1261 Baldwin Ave., Pontiac, Michigan.

9. At approximately 12:15 PM, ANGULO-BENITEZ and HMA1 returned to residence.

10. At approximately 12:35 PM, investigators executed the search warrant at the residence. While approaching the residence, I noticed that the front door was open. At the same time, a DEA aircraft spotter alerted investigators that two individuals were fleeing the residence through the backyard.

11. Investigators approached the residence and gave verbal warnings in both English and Spanish. HMA1 exited the residence and was detained without incident. A short time after the residence was cleared, investigators located and detained a Hispanic male adult (HMA2) hiding in bushes approximately a block away from the residence. ANGULO-BENITEZ was then located near the Chase Bank and was detained. Both individuals had two cell phone each on their person. I know from my training and experience that narcotics traffickers will typically have multiple cell phones in order to compartmentalize communications. Based on the

investigator's surveillance before and during the approach to 45 E. Ypsilanti Avenue, and the circumstances they were found afterwards, I believe HMA2, and ANGULO-BENITEZ were the two individuals who fled from the house when agents approached.

12. During a search of the residence, Investigators discovered multiple items indicating the residence was being utilized as a location to store illegal narcotics. Warren Police Department K9 Detective Guy Angelucci's K9 partner, a trained and certified narcotics K9, conducted of sniff of the residence. The K9 indicated to the presence of narcotics in rooms believed to be utilized by ANGULO-BENITEZ and HMA2.

13. The residence is a one story four-bedroom house. Two bedrooms are on the first floor and two bedrooms are in the basement. ANGULO-BENITEZ's bedroom is the northmost bedroom in the basement next to HMA2's to the south. A search of the bedroom believed to be used by ANGULO-BENITEZ resulted in the discovery of the following items:

- A suitcase with approximately 18 kilograms of suspected cocaine, located in the closet of the bedroom. A field test of a one of the kilograms tested positive for the presence of cocaine.



- On top of the dresser, in the same bedroom, investigators found a shoe box containing a large amount of US currency, rubber bands, and mail from the IRS addressed to Pedro L Angulo Benitez at 45 E. Ypsilanti Ave., Pontiac.



- On top of the dresser, in the same bedroom, investigators found an additional shoe box containing a piece of mail addressed to Pedro Angulo Benitez at 45 E. Ypsilanti Ave, Pontiac, MI, Pedro ANGULO-BENITEZ's Mexican Birth Certificate and unknown powdery substance packed in a small plastic bag.



14. Additionally, investigators discovered a scale in the kitchen and latex gloves in the basement.

15. Based on training and experience, I know that drug traffickers typically have large amounts of currency on hand and packaging materials for breaking down

8

larger quantities of narcotics for sale. Based on the above items discovered at the residence, I believe that ANGULO-BENITEZ was storing and distributing cocaine from his residence located at 45 E. Ypsilanti Ave, Pontiac, Michigan.

## Conclusion

16. Based on the facts established throughout this affidavit, probable cause exists to believe that Pedro ANGULO-BENITEZ did knowingly and intentionally possessed with intent to distribute cocaine in violation of Title 21, United States Code, Section 841(a)(1).

_____
Peter Leahey, Special Agent
Drug Enforcement Administration

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Honorable Anthony P. Patti
United States Magistrate Judge

Dated: September 11, 2024

9